IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| J & J SPORTS PRODUCTIONS, INC., as Broadcast Licensee of the October 18, 2008 Pavlik/Hopkins Program,<br><br>                 Plaintiff,<br><br>v.<br><br>LATRIECE R. FITZGERALD, Individually, and as officer, director, shareholder and/or principal of THE PLAYING FIELD, LLC d/b/a THE PLAYING FIELD SPORTS BAR & GRILL, a/k/a THE PLAYING FIELDS LLC, and the PLAYING FIELD, LLC, d/b/a the PLAYING FIELD SPORTS BAR & GRILL, a/k/a THE PLAYING FIELDS LLC,<br><br>                 Defendants. | 1:09-cv-1684-WSD |

## **OPINION AND ORDER**

This matter is before the Court on Plaintiff J & J Sports Productions, Inc.'s ("Plaintiff") Motion for Default Judgment against Defendant The Playing Field, LLC, d/b/a The Playing Field Sports Bar & Grill, a/k/a The Playing Fields LLC ("Defendant") [9].

**I.	BACKGROUND**

Plaintiff claims that Defendant violated 47 U.S.C. § 605 and § 553 of the Communications Act of 1934, as amended, by unlawfully intercepting, receiving, and exhibiting the October 18, 2008 boxing match between Kelly Pavlik and Bernard Hopkins (the "Program"). Plaintiff owned the distribution rights to the Program, which was broadcast by encrypted satellite signal and by closed circuit television. Complaint, ¶ 15. Commercial establishments could show the Program to their patrons if they were contractually authorized to do so by Plaintiff. See id. at ¶ 16. Plaintiff contracted with various establishments and granted them the right to broadcast the Program in exchange for a fee. Id.; Plaintiff's Brief in Support of its Motion for Default Judgment ("Pl.'s MDJ"), 2. To combat piracy of the Program, Plaintiff hired investigative agencies to retain auditors to visit various bars and restaurants in Georgia on the night of October 18, 2008, to see whether these establishments were intercepting and displaying the Program without authorization or payment. Pl.'s MDJ, 2.

On October 18, 2008, auditor Jerrell V. Solomon visited Defendant's establishment, the Playing Field, located at 4093 Marietta Street, Suite C, Powder Springs, Georgia, 30127. Affidavit of Plaintiff ("Pl. Aff."), Ex. C. The Playing Field had not contracted with Plaintiff to show the Program. See id. at Ex. B.

Solomon did not pay a cover charge to enter the establishment.  Id. at Ex. C.  Once inside, Solomon observed the Program being shown on one of the nine television sets.  Id.  The establishment had a fire code occupancy of one hundred and fifty people, and approximately eleven patrons were present.  Id.  Solomon also observed that there was a satellite dish visible on the premises.  Id.

On June 22, 2009, Plaintiff filed its Complaint [1].  Plaintiff alleged two counts in its Complaint: (1) unauthorized reception and publication of satellite transmissions in violation of 47 U.S.C. § 605, or, alternatively, (2) unauthorized reception and publication of cable service in violation of 47 U.S.C. § 553.  On September 9, 2009, Plaintiff served Defendant with its Complaint [6].  As of the date of this Order, Defendant has not answered or otherwise responded to Plaintiff's Complaint.

On October 19, 2009, Plaintiff filed its Motion for Clerk's Entry of Default against Defendant [8], and, on October 20, 2009, the Clerk issued an entry of default.  On October 21, 2009, Plaintiff filed its Motion for Default Judgment against Defendant [9].

## II. DISCUSSION

### A. The Standard on Default Judgment

Rule 55(b) of the Federal Rules of Civil Procedure provides:

> (b) Entering a Default Judgment.
>   (1) *By the Clerk.* If the plaintiff's claim is for a sum certain or a sum that can be made certain by computation, the clerk – on the plaintiff's request, with an affidavit showing the amount due – must enter judgment for that amount and costs against a defendant who has been defaulted for not appearing and who is neither a minor nor an incompetent person.
>   (2) *By the Court.* In all other cases, the party must apply to the court for a default judgment . . . . If the party against whom a default judgment is sought has appeared personally or by a representative, that party or its representative must be served with written notice of the application at least 3 days before the hearing. The court may conduct hearings or make referrals . . . when, to enter or effectuate judgment, it needs to:
>   (A) conduct an accounting;
>   (B) determine the amount of damages;
>   (C) establish the truth of any allegation by evidence; or
>   (D) investigate any other matter.

Fed. R. Civ. P. 55(b). "The entry of a default judgment is committed to the discretion of the district court . . . ." Hamm v. DeKalb County, 774 F.2d 1567, 1576 (11th Cir. 1985), cert. denied, 475 U.S. 1096 (1986) (citing 10A Charles Alan Wright, et al., Federal Practice & Procedure § 2685 (1983)). "In considering a motion for entry of default judgment, a court must investigate the legal sufficiency of the allegations of the plaintiff's complaint." Bruce v. Wal-Mart Stores, Inc., 699 F. Supp. 905, 906 (N.D. Ga. 1988).

## B. 47 U.S.C. § 605 and 47 U.S.C. § 553

In its Complaint, Plaintiff seeks relief under two different statutory provisions – 47 U.S.C. § 605, or, alternatively 47 U.S.C. § 553.[1] In its Motion for Default Judgment, Plaintiff argues that § 605 applies to the facts of this case, and the Court should assess damages under this section. Section 605 provides that:

> No person not being authorized by the sender shall intercept any radio communication and divulge or publish the existence, contents, substance, purport, effect, or meaning of such intercepted communication to any person. No person not being entitled thereto shall receive or assist in receiving any interstate or foreign communication by radio and use such communication (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto.

47 U.S.C. § 605(a).[2] Section 553 prohibits "intercepting or receiving any communications service offered over a cable system, unless specifically authorized to do so by a cable operator or as may otherwise be specifically authorized by law." Id. at § 553(a)(1).

---

[1] Plaintiff admits that it can only recover under one statute. Complaint, ¶ 31; see also TKR Cable Co. v. Cable City Corp., 267 F.3d 196 (3d Cir. 2001) (holding that a defendant cannot be held liable under § 605 and § 553 for the same conduct); J & J Sports Prods., Inc. v. Blackwell, 2009 U.S. Dist. LEXIS 62240, at *5 (M.D. Ala. July 21, 2009).

[2] Satellite signals are considered "radio communication." Scientific-Atlanta, Inc. v. Fenley, 1997 U.S. Dist. LEXIS 22700, at *35 (N.D. Ga. Jan. 14, 2007) (citing United States v. Howard, 13 F.3d 1500, 1501 (11th Cir. 1994)).

There is a split among the circuits as to what activity each section covers and how to reconcile potential overlap in the provisions.[3] Some circuits have held that § 605 applies to satellite transmissions <u>and</u> cable programming transmitted over a cable network. Other circuits have held that only § 553 covers cable programming transmitted over a cable network. Plaintiff urges the Court to follow the Second Circuit's finding in <u>International Cablevision v. Sykes</u>, 75 F.2d 123 (2nd Cir. 1996), that both § 605 and § 553 cover interception of cable programming transmitted over a cable network.[4] Plaintiff notes, however, that the Third and Seventh Circuits have held otherwise. In <u>TRK Cable Co. v. Cable City Corp.</u>, 267 F.3d 196 (3d Cir. 2001), the Third Circuit concluded that "§ 605 encompasses the interception of satellite transmissions 'to the extent reception or interception occurs prior or not in connection with, distribution of the service over a cable system,' and no more. Once a satellite transmission reaches a cable system's wire distribution phase, it is subject to § 553 and is no longer within the purview of § 605." <u>Id.</u> at 207 (citations omitted); <u>see</u> <u>also</u> <u>United States v. Norris</u>, 88 F.3d 462, 466 (7th Cir. 1996) (affirming district court's finding that "where cable programming is

---

[3] The Eleventh Circuit has not addressed this issue.

[4] Although Plaintiff makes this argument in its Motion for Default Judgment, in its Complaint, Plaintiff states that the interception of a satellite transmission violates 47 U.S.C. § 605, while the interception of a signal through a cable system violates 47 U.S.C. § 553. <u>See</u> Complaint, ¶ 31.

6

broadcast through the air and then retransmitted by a local cable company over a cable network, § 605 should govern the interception of the satellite or radio transmission through the air, while § 553(a) should govern the interception of the retransmission over a cable network. . . "). The Court is persuaded by the Third and Seventh Circuit's interpretation of § 605's plain language, and finds that § 605 prohibits commercial establishments from intercepting and broadcasting satellite programming, while § 553 addresses interceptions that occur through a cable network. See Scientific-Atlanta, 1997 U.S. Dist. LEXIS 22700; CSC Holdings, Inc. v. Kimtron, Inc., 47 F. Supp. 2d 1361 (S.D. Fla. 1999).

Plaintiff alleges that the Program "originated via a satellite uplink and was subsequently re-transmitted to cable systems and satellite companies via satellite signal," and "was broadcast either by closed circuit television or by encrypted satellite signal." Pl.'s MDJ, 4, 2. Plaintiff admits that "it is impossible . . . to determine the exact manner in which the Defendant in this action pirated the [Program] without further discovery or an admission from the Defendant," because there are "multiple illegal methods of signal pirating, including pirating the signal

through the airwaves, via satellite, or pirating the signal through a cable wire." Id. at 6-7.[5]

In this circumstance, the Court elects to "giv[e] Plaintiff the benefit of the doubt" and "not fault[] Plaintiff for failing to plead the particular manner of interception since this may be exclusively in Defendants' knowledge." See J & J Sports Prods. v. Gallegos, 2008 U.S. Dist. LEXIS 61066, at *7-8 (D. N.J. Aug. 5, 2008). The Court finds that Plaintiff has alleged and presented sufficient evidence that Defendant violated the common elements of both § 605 and § 553. Plaintiff has alleged and provided evidence that Defendant intercepted the Program, Defendant did not pay for the right to receive the transmission, and Defendant displayed the broadcast to patrons of its establishment.

### C. Damages

The Court may only award damages for default judgment without a hearing if "the amount claimed is a liquidated sum or one capable of mathematical calculation." Adolph Coors Co. v. Movement Against Racism and the Klan, 777 F.2d 1538, 1543 (11th Cir. 1985). Under such circumstances, the record must "adequately reflect[] the basis for award via . . . demonstration by detailed

---

[5] Plaintiff suggests that § 605 should apply to the facts here because the auditor noticed a satellite dish located on Defendant's property. Pl.'s MDJ, 7, 8. Plaintiff does not provide any additional evidence to support this claim.

affidavits establishing the necessary facts." Id. at 1544. "[A] plaintiff must also establish that the amount is reasonable under the circumstances." Pitts ex rel. Pitts v. Seneca Sports, Inc., 321 F. Supp. 2d 1353, 1356 (S.D. Ga. 2004).

Under § 605, a court may award statutory damages between $1,000 and $10,000 for each violation, 47 U.S.C. § 605(e)(3)(C)(i)(II), and if a violation is "committed willfully and for purposes of direct or indirect commercial advantage or private financial gain," a court may award up to an additional $100,000, id. at § 605(e)(3)(C)(ii). Under § 553, a court may grant statutory damages between $250 and $10,000 per violation, id. at § 553(c)(3)(A)(ii), and up to $50,000 may be awarded if the court finds that the act was violated "willfully and for purposes of commercial advantage or private financial gain," id. at § 553(c)(3)(B). In addition to damages, both § 605 and § 553 provide that a court shall award the plaintiff full costs of bringing an action, including reasonable attorneys' fees. Id. at § 605(e)(3)(B)(iii), § 553(c)(2)(C).

Plaintiff seeks $10,000 – the maximum amount of statutory damages permitted under § 605(e)(3)(C)(i)(II) (and § 553(c)(3)(A)(ii)) – for Defendant's unlawful interception and broadcast of the Program. Plaintiff also asks the Court to add "substantial enhanced damages" of up to $100,000 for Defendant's willfulness, pursuant to § 605(e)(3)(C)(ii). Pl.'s MDJ, 11.

The difference in the authorized range of statutory damages permitted by § 605 and § 553 is immaterial here, because the Court declines to award the minimum or maximum amount of statutory damages under either section. The starting point for Plaintiff's statutory damages is $1,200, because that is what Defendant would have had to pay, at a minimum, to legitimately purchase the right to broadcast the Program. See Pl.'s MDJ, 11; id. at Ex. B. The Court also is aware that statutory damages should provide some deterrence. As such, the Court determines that statutory damages of $2,500 is an appropriate award in this case. See Blackwell, 2009 U.S. Dist. LEXIS 62240, at *7-8 (awarding $2,500 in statutory damages for a similar violation). The Court does not find that Plaintiff is entitled to additional statutory damages, because Plaintiff has not provided any evidence of willfulness for financial gain. According to Plaintiff, Defendant did not charge admission on the night of the broadcast, the Program was showing on only one television, and there were only eleven patrons in an establishment that had a one-hundred-and-fifty-person capacity.

The Court further finds that Plaintiff is entitled to its attorneys' fees and costs incurred. Plaintiff's counsel has submitted an affidavit in support of Plaintiff's request for attorneys' fees and costs. See Affidavit of Plaintiff's Attorney. Plaintiff seeks attorneys' fees in the amount of $1,309.25, and costs in

the amount of $505 for filing and service of process fees.  Id.  The Court finds that the amount of attorneys' fees and costs is reasonable and grants Plaintiff's request for attorneys' fees and costs in the amount of $1,814.25.

## III. CONCLUSION

For the foregoing reasons,

**IT IS HEREBY ORDERED** that Plaintiff J & J Sports Productions, Inc.'s Motion for Default Judgment against Defendant The Playing Field, LLC, d/b/a The Playing Field Sports Bar & Grill, a/k/a The Playing Fields LLC [9] is **GRANTED**, as outlined by the terms of this Order.  The Clerk of Court is **DIRECTED** to enter judgment in favor of Plaintiff against Defendant for:

1. $2,500 statutory damages, and

2. $1,814.25 attorneys' fees and costs.

**SO ORDERED** this 30th day of October, 2009.

_____
WILLIAM S. DUFFEY, JR.
UNITED STATES DISTRICT JUDGE